May 17, 1978

## 78-27 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, CIVIL SERVICE COMMISSION, AND THE GENERAL COUNSEL, PRESIDENT'S REORGANIZATION PROJECT

### Presidential Appointees—Removal Power or Disciplinary Action—Constitutional Law (Article II, § 2, cl. 2)

This responds to your inquiry whether Congress has the constitutional power to authorize any Federal officer or agency to remove, or otherwise to discipline, Presidential appointees performing executive functions.. Pursuant to the Civil Service Commission Reform bill, S. 2640, now pending in Congress, the Merit Systems Protection Board will have no authority to take any action with respect to allegations of misconduct by such Presidential appointees. Instead, the bill instructs the Special Counsel to report the results of any investigation of noncompliance by "Presidential appointees" directly to the President, thereby leaving to the President the discretion to take whatever action he or she deems appropriate (§§ 1206(h)(2), 1206(i)). You ask whether Congress could amend the bill to confer upon the Board the authority to take disciplinary action against such appointees.

First, we address the question of removal. The Supreme Court held in *Myers v. United States*, 272 U.S. 52 (1926), that the Constitution does not grant to Congress any authority to regulate the removal of executive officers appointed by the President. The essence of the Court's ruling is contained in the following statements:

> The power of removal is incident to the power of appointment, not to the power of advising and consenting to appointment, and when the grant of the executive power is enforced by the express mandate to take care that the laws be faithfully executed, it emphasizes the necessity for including within the executive power as conferred the exclusive power of removal. [*Id.*, at 122]

> The condition upon which the power of Congress to provide for the

removal of inferior officers rests is that it shall vest the appointment in some one other than the President with the consent of the Senate. Congress may not obtain the power and provide for the removal of such officer except on that condition. If it does not choose to entrust the appointment of such inferior officers to less authority than the President with the consent of the Senate, it has no power of providing for their removal. [*Id.*, at 162]

Accordingly, when an official performing executive functions is appointed by the President with the advice and consent of the Senate, he or she "will be subject to removal by the President alone, and any legislation to the contrary must fall as in conflict with the Constitution." *Id.*, at 163.

The bill, however, exempts from the removal authority of the Merit Systems Protection Board all "Presidential appointees." Although not defined in the bill, this term includes both (1) executive officers appointed by the President with the advice and consent of the Senate, and (2) those "inferior officers" whose appointment the Congress has vested in the President alone (Art. II, § 2, cl. 2, of the Constitution). Although the *Myers* case is concerned with the first class of executive officers, *dictum* suggests that Congress has no greater authority to remove officers appointed by the President alone than it would have over those subjected to the advice and consent process. 272 U.S., at 161-62.[1] We find no reasonable basis for distinguishing between the two types of appointees.[2]

The second question presented is whether Congress may confer on the Board the authority to take disciplinary action against Presidential appointees. Disciplinary sanctions contemplated under the bill are: demotion, debarment from Federal employment for a stated period, suspension, reprimand, or civil

---

[1] The pertinent language addressing this issue in the *Myers* opinion is:

Whether the action of Congress in removing the necessity for the advice and consent of the Senate, and putting the power of appointment in the President alone, would make his power of removal in such case any more subject to Congressional legislation than before is a question this Court did not decide in the *Perkins* case [*United States* v. *Perkins*, 116 U.S. 483]. Under the reasoning upon which the legislative decision of 1789 was put, it might be difficult to avoid a negative answer, but it is not before us and we do not decide it.

[2] There is another issue that arises whenever the *Myers* analysis is examined. It relates to the third method outlined in Art. II, § 2, cl. 2, for appointing inferior officers; that clause provides that "inferior officers" may, if Congress desires, be appointed by the heads of departments. The question is whether, and to what extent, the removal of those officers may be restricted. The Court in *Myers* made clear that Congress "may prescribe incidental regulations controlling and restricting . . . the exercise of the power of removal" of inferior officers who perform executive functions and who have been appointed by heads of departments. The Court in *Myers* also said that Congress could not "draw to itself or to either branch of it, the power to remove or the right to participate in the exercise of that power." *Id.*, at 161. The question might be raised if by assigning removal authority to the Merit Systems Protection Board—an independent agency vested with quasi-judicial power—Congress has in some fashion "drawn to itself" the power of removal. The short answer lies in the Court's analysis in *Weiner* v. *United States*, 357 U.S. 349, 355-56 (1958), in which the Court made clear that independent regulatory commissions are to be independent not only from the Executive but from Congress. Under the circumstances, we have little doubt about the propriety of the Board taking disciplinary action, including removal, with respect to such inferior officers.

penalty. § 1207(a). We are aware of no precedents controlling this question, but we believe that Congress does have, and must have, some authority to prescribe sanctions against executive branch officials who act in violation of existing law. The more difficult issue is whether the imposition of those sanctions can be assigned to a body over which the President has limited control. Insofar as Presidential appointees are concerned, we doubt that Congress may take from the President the ultimate authority to act in that manner. This would surely disrupt the appointee's ability to carry out the instructions of the President. The power to demote, suspend, or debar a Presidential appointee from Federal employment carries with it the power to supervise the appointee's actions; more importantly, to take this power away from the President would interfere with the President's duty faithfully to execute the laws. The conclusion is perhaps more doubtful with respect to lesser actions such as reprimand and civil penalties, but here again it is quite likely that disruptions would result. For a Presidential appointee to set aside the time to prepare for a hearing and to follow through with the administrative process contemplated by the bill might be a substantial interference with the President's necessary direction and control of such officials. It would also cloud the line of authority between the President and his subordinates.

The *Myers* holding proceeded from the view that the power to remove is implicit in the power to appoint and must necessarily be retained by the President if he is to fulfill his constitutional obligation faithfully to execute the laws. A different conclusion cannot be drawn with respect to the imposition of what might be seen as less drastic sanctions.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*